IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTY C.,[1]

            Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

Civ. No. 1:21-cv-01798-MC

OPINION AND ORDER

_____

**MCSHANE, Judge:**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security's decision denying her application for disability insurance benefits and supplemental security income under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) improperly rejecting Plaintiff's subjective symptom testimony, and (2) improperly assessing the opinion of Dr. Nalla.[2] Because the ALJ erred, and because the record is fully developed and requires a

_____

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

[2] Plaintiff also argues that the ALJ erred by improperly considering whether Plaintiff met listing 11.02B, but the Court does not need to address this argument given that Plaintiff is disabled regardless of the outcome in the listing determination.

finding that Plaintiff is disabled as of July 25, 2018, the Commissioner's decision is REVERSED and this matter is REMANDED for calculation of benefits.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for SSI on August 20, 2018, alleging disability since July 25, 2018. Tr. 79, 81. Her claim was denied initially and upon reconsideration. Tr. 133, 138, 144, 147. Plaintiff appeared before the Honorable Diane Davis on January 25, 2021. Tr. 36–78. ALJ Davis denied Plaintiff's claim on February 19, 2021. Tr. 10–30. Plaintiff sought review from the Appeals Council and was denied, rendering the ALJ's decision final. Pl.'s Br. at 2, ECF No. 11. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff is 46 years old and was 41 on her alleged onset date. *See* Tr. 81. Plaintiff has a high school diploma and past relevant work experience as a typist or order clerk. Tr. 29, 263. Plaintiff alleges disability from anxiety, migraines, major depressive disorder, chronic kidney disease stage 3B, a brain lesion causing epilepsy, and a right temporal lobe epilepsy focal and complex partial. Tr. 81–82.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the

ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can

reasonably support either affirming or reversing, 'the reviewing court may not substitute its

judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d

519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine

whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden

of proof rests on the claimant for steps one through four, and on the Commissioner for step five.

*Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d

1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the

claimant can make an adjustment to other work existing in significant numbers in the national

economy after considering the claimant's residual functional capacity ("RFC"), age, education,

and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this

burden, then the claimant is considered disabled. *Id.* If, however, the Commissioner proves that

the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 953-54.

The ALJ determined Plaintiff's only severe impairment is epilepsy. Tr. 16. As noted,

Plaintiff argues the ALJ erred in improperly rejecting: (1) Plaintiff's subjective symptom

testimony; and (2) the opinion of Dr. Shravani Nalla, M.D., Plaintiff's neurologist.

Plaintiff contends the ALJ erred in discounting her subjective statements about her

seizures. To determine whether a claimant's testimony about subjective pain or symptoms is

credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir.

2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an

underlying impairment that could reasonably be expected to produce the symptoms alleged.
*Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence.  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony."  *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013).

In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However,

especially in the mental health context, an ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects long-standing psychological disability. *See Ghanim*, 763 F.3d at 1164; *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Moreover, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)

The record demonstrates Plaintiff's primary concern was her seizures. Tr. 44. At the hearing before the ALJ, Plaintiff testified that her seizures and their postictal effects were the main obstacles preventing Plaintiff from working. Tr. 44–49. Plaintiff stated that her aura seizures occur anywhere from two to four times a week, and that during the seizures she experiences symptoms that include stomach dropping, déjà vu, tunnel vision, nausea, and numbness on the right side of her body. She has trouble speaking. Tr. 46–47. Plaintiff testified that after these seizures, she feels weak, confused, and exhausted. Tr. 48. Plaintiff stated that she feels exhausted anywhere from thirty minutes to an hour after these seizures. To find relief she has to relax, lay down, and let "whatever's happening happen." Tr. 49.

Plaintiff's testimony regarding the symptoms from her seizures is supported by ample evidence in the medical records. Pl.'s Br. 13. This evidence includes an abnormal brain MRI from January 2018, revealing a focal T2 hyperintensity of the subcortical medial left parietal lobe, multiple seizure related diagnoses and hospitalizations, and seizure events witnessed by emergency personnel. Tr. 424, 432, 528, 580-581, 721, 763, 1367, 1369. In February 2018, Plaintiff met with neurologist, Dr. Oscar Sanchez, M.D., who diagnosed Plaintiff with seizure disorder and assessed a cortical migrational defect in the left parietal region. Tr. 580–81, 1423. In March 2018, Plaintiff returned to Dr. Sanchez and reported weakness, fatigue, headaches,

difficulty in concentration, and feelings of light-headedness. Tr. 387, 576. Plaintiff was positive

for tremors, and Dr. Sanchez increased her zonisamide prescription. Tr. 576–77. On July 15,

2018, Plaintiff had a seizure in an ambulance that was witnessed by EMS personnel. Tr. 528. In

August 2018, Dr. Marissa Kellogg, M.D., and Dr. Lia Ernst, M.D. diagnosed Plaintiff with focal

epilepsy secondary to left parietal brain focal cortical dysplasia/gliosis. Tr. 436, 721. In October

2019, Plaintiff went to OHSU complaining of daily focal seizures that caused fatigue, headaches,

and limb jerking. Tr. 710. On November 30, 2020, Plaintiff fell to the floor, and was transported

by ambulance to the emergency department. Tr. 1369. Her seizure lasted for over twenty-five

minutes. When she arrived at the hospital doctors noted her observed drowsiness was consistent

with a postictal state. Tr. 1372. Dr. Jennifer Hartstock-Vandline, M.D., assessed Plaintiff with

chronic seizure disorder with focal onset seizures with secondary generalization with postical

and toxic encephalotpathy. Tr. 1367.

　　Where, as here, there is no evidence of malingering, the ALJ may only reject the

claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti*, 533

F.3d at 1039. In this case, the ALJ simply summarized the medical evidence without identifying

what evidence discounted Plaintiff's alleged symptoms. Tr. 20–27. Without that specific

identification, the ALJ could not have, nor did it, "link" such testimony to contradictory evidence

in the record. That is error under the specific, clear, and convincing requirement articulated in

*Brown-Hunter*, 806 F.3d at 493.The ALJ found Plaintiff's testimony that she was advised to not

be left alone inconsistent with her seizures rarely being witnessed by others. Tr. 21–27. This is

not an inconsistency because Dr. Sanchez warned her not to drive, swim, or bathe alone, and

Plaintiff's husband, mother, and daughter confirmed that they would provide "close to 24/7

supervision for her." Tr. 1347, 1202. Furthermore, Plaintiff's activities did not establish that she

is capable of performing work-like activity on a routine basis. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ failed to provide clear and convincing reasons for finding Plaintiff not credible as to the extent of her limitations.

In addition to the medical record, Plaintiff's testimony is supported by the medical opinion of Dr. Nalla, Plaintiff's neurologist. Plaintiff argues that the ALJ erred in her assessment of Dr. Nalla's medical opinion. Plaintiff's claim, which was filed in 2018, was filed on or after March 27, 2017, so the new regulations for evaluating medical opinion evidence apply. *See Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5867-68 (Jan. 18, 2017). Under the new regulations, the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a).

Instead, the ALJ must consider all the medical opinions in the record and evaluate each medical opinion's persuasiveness using factors. *Id.* The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [he or she] considered the supportability and consistency factors for a medical source's medical opinions ... in [his or her] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain

how she considered other factors unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

On December 30, 2020, Dr. Nalla completed a medical source statement indicating that Plaintiff experiences focal seizures and grand mal seizures due to a left medial parietal lesion. Tr. 1419. Dr. Nalla opined that Plaintiff's symptoms from her seizures (including headaches, fatigue, and drowsiness) affect her daily activities for up to two hours after having a seizure. Tr. 1420. Dr. Nalla opined that other postictal phenomena after the seizures such as confusion, severe headaches, and exhaustion would affect Plaintiff's daily activities for twenty-four hours or longer after a seizure. Tr. 1420. Dr. Nalla also opined that Plaintiff would be absent from work more than four days per month because of her impairments. Tr. 1421. The vocational expert testified that if Plaintiff were to be off-task fifteen percent or more of the workday, that would eliminate all competitive work. Tr. 74.

The ALJ found Dr. Nalla's opinion to be unpersuasive. Tr. 28. The ALJ explained that Dr. Nalla's treating relationship with Plaintiff was "limited" given that she only treated Plaintiff for a little over a month. *Id.* The ALJ also reasoned that Plaintiff's seizure history during the limited treatment period included "acute treatment for seizure activity that otherwise was not consistently shown throughout the previous three years." *Id.* The ALJ concluded that Dr. Nalla's opinion was not supported by Plaintiff's unremarkable physical examinations where she exhibited a normal gait and intact motor strength, nor consistent with Plaintiff's normal mental status findings where her memory was intact. *Id.* The ALJ and Commissioner also discussed that Dr. Nalla noted that Plaintiff's most recent EEG from October 9, 2018 was normal. Def. Br. 6, Tr. 25, 1441. Lastly, the ALJ relied heavily on the opinion of the state agency physicians. Tr. 27.

The Court is not persuaded by the ALJ's reasoning. First, pursuant to the new regulations, the length of treatment is no longer a relevant factor when assessing the credibility of medical opinions, unless there are two medical opinions both equally well supported on the same issue but not exactly the same. 20 C.F.R. §§ 404.1520c(b)(3). Next, Dr. Nalla is a neurology specialist, and her treatment notes demonstrate that she had reviewed Plaintiff's medical records since at least November of 2017, before giving her opinion. Tr. 1441–43. Additionally, Plaintiff's seizure activity while under the care of Dr. Nalla was consistent with her seizure activity since November 2017, that is, intermittent grand mal seizures followed by up to daily focal seizures. Even though Dr. Nalla didn't witness Plaintiff's seizures, EMS witnessed Plaintiff's tonic-clonic seizure on November 30, 2020, and Dr. Jennifer Hartscok-Vandine assessed Plaintiff with chronic seizure disorder. Tr. 1367–69. The ALJ also mischaracterized the nature of seizures when discussing how Dr. Nalla's opinion is both unsupported and inconsistent with the record. Tr. 28. Seizures are generally short in duration, but still very serious medical events. Therefore, Dr. Nalla's opinion should not be found unsupported or inconsistent simply because Plaintiff attended doctor's appointments and presented with a normal gait and mental status a majority of the time. Plaintiff not experiencing a seizure within a doctor's office has no logical relevance to her seizure impairments. As discussed, the medical record has extensive documentation by medical professionals who treated or witnessed Plaintiff's seizures. Lastly, the ALJ's and Commissioner's discussion regarding Plaintiff's normal EEG was done without proper context. Dr. Kellogg explained that "a normal EEG does not rule out a clinical diagnosis of epilepsy." Tr. 761. Additionally, the ALJ finding the state agency physicians opinion persuasive was in err since these opinions were given before Plaintiff's very active seizure history in 2020 Unlike Dr. Nalla's opinion, they simply are not based on the entire medical

record. Tr. 81–104, 107–132.  Dr. Nalla's opinions are both consistent and supported by the

medical record, and the ALJ erred in rejecting Dr. Nalla's opinion.

The ALJ failed to consider substantial evidence in the record regarding Plaintiff's seizure

symptoms, including Plaintiff's consistent subjective reporting and numerous treating notes from

the alleged onset date through the date of the ALJ's decision. "[T]he ALJ cannot reject testimony

of pain without making findings sufficiently specific to permit the reviewing court to conclude

that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d

748, 750 (9th Cir. 1995). Here, the ALJ made no such findings with regard to Plaintiff's

testimony regarding her most limiting impairments.

Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper

course, except in rare circumstances, is to remand to the agency for additional investigation or

explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*,

379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the

record has been fully developed and where further administrative proceedings would serve no

useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation

of benefits is only appropriate where the credit-as-true standard has been satisfied, which

requires:

> (1) the record has been fully developed and further administrative proceedings
> would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
> reasons for rejecting evidence, whether claimant testimony or medical opinion;
> and (3) if the improperly discredited evidence were credited as true, the ALJ
> would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

This is a rare instance where remand for an award of benefits is appropriate. As noted,

Plaintiff testified that her aura seizures occur anywhere from two to four times a week, and that

she feels exhausted anywhere from thirty minutes to an hour after these seizures. Tr. 44–49.

10 – OPINION AND ORDER

Treating notes throughout the record support Plaintiff's testimony. Finally, that evidence is supported by the opinion of Plaintiff's neurologist, Dr. Nalla, a specialist in her field. Although the Commissioner argues the ALJ's decision should be affirmed, the vocational expert testified that someone off-task fifteen percent or more of the workday would not be able to sustain employment. Tr. 74. Plaintiff is therefore disabled under the Act.

## CONCLUSION

The decision of the Commissioner is REVERSED and this matter is REMANDED to the Commissioner for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 6th day of July, 2023.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge